

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| M.V., | § | No. 08-14-00156-CV |
| Appellant, | § | |
| | § | Appeal from the |
| v. | § | 65th District Court |
| | § | |
| TEXAS DEPARTMENT OF FAMILY AND PROTECTIVE SERVICES, | § | of El Paso County, Texas |
| | § | (TC# 2012DCM07071) |
| Appellee. | § | |

## **O P I N I O N**

M.V. appeals the termination of his parental rights. Finding no error, we affirm the trial court's judgment.

### **FACTUAL SUMMARY**

S.V. (Mother) is the mother of K.V., M.C., and A.C., (the children). Appellant, M.V., is the father of K.V. (the child). B.C. is the father of M.C. and A.C. B.C. was indicted after police officers found that he and Mother had left the children alone on February 19, 2011, while they went to a bar. K.V. was less than three years old at the time. B.C. pleaded guilty to two counts of child abandonment as alleged in the indictment, a criminal offense for which he was placed on four years' deferred adjudication probation. TEX. PENAL CODE ANN. § 22.041 (West 2011). Upon CPS removal, the children were thereafter placed with their maternal grandmother.

On June 28, 2013, the children were removed from placement with their grandmother, and placed in foster care after Mother was detained for crossing from Ciudad Juarez, Mexico, with 33.5 pounds of marijuana in the company of all three children. The Texas Department of Family and Protective Services filed suit seeking termination of parental rights of S.V., B.C., and Appellant.

At the time of trial in April 2014, Appellant was married to Mother but they were not cohabitating. K.V. was six years old. Appellant and Mother separated in 2009, with several unsuccessful attempts at reconciliation which resulted in a final separation in 2012. When asked if he understood that Child Protective Services had become involved with K.V. as a result of allegations regarding drug use and abandonment of K.V. and her siblings, Appellant answered that he had "found out very little of it."[1] However, Appellant knew B.C. had been arrested for drugs. Appellant could not recall the last time he had a conversation with Mother but noted that it had "been a long time." When they lived together, Appellant never saw Mother using illegal drugs but he had observed her suffer sudden changes in character as a result of bipolar disorder. When Mother would experience these changes, K.V. and her siblings were either with their mother and Appellant or at school. Appellant left Mother because of her illness but he left K.V. in her care "because she was the mother." After their separation, Appellant helped Mother whenever she needed something, and he knew that Mother's parents and brother were available to help with the children.

When asked if Mother ever discussed incidents of family violence with him, specifically involving a person named Jesus Hernandez, Appellant replied that Mother had told him that Jesus

---

[1] Appellant testified with the assistance of an interpreter.

"used to beat her up."[2] In response to being asked if he believed it was acceptable to leave his child in an environment "with that sort of thing occurring," Appellant admitted that he knew it was not. When asked whether he had filed charges against Mother after a physical altercation in which she scratched Appellant's back, chest, and arm, Appellant stated that he had not filed charges and, although police included those details in the police report, he had never made those assertions to police. Appellant explained that particular event occurred during a family trip when K.V. was three or four months' old, and after Mother had experienced a sudden change of character. According to Appellant, that was the only incident of family violence in which Appellant had been involved.

Appellant testified he was aware of his obligations under the terms of his court-ordered service plan, and that he began participating in services before the children were removed from their grandmother. This included participation in a drug treatment program. Appellant conceded that he was attempting to comply with his service plan so he could have K.V. live with him, but he had twice tested positive for cocaine. He also admitted consuming cocaine in the first instance but claimed the second test was positive after he kissed someone who had used cocaine. Appellant's drug treatment facility records indicate that he was being treated for alcohol dependence and was attempting to obtain custody of his child. Appellant admitted that he was very close to completing his service plan when he tested positive for cocaine, but again denied that he had consumed the drug prior to his test. Thereafter, Appellant was required to return to his treatment plan. Although admitting that he had used cocaine when he was younger, Appellant

---

[2] Nothing in the record indicates when, where, or how often this violence occurred or whether K.V. was present during the violence or was ever in the presence of Jesus Hernandez. However, the record on appeal includes a March 26, 2012, police report wherein Mother is listed as a suspect in a family-violence assault allegedly committed upon Jesus Hernandez, and a protective order issued for the protection of Hernandez. The police report does not indicate that any child was present, and nothing in the record shows that Appellant was aware of this particular event.

insisted that he was no longer using the drug and offered to take a drug test during trial. Appellant stated that K.V. was more important to him than cocaine. Also before the trial court was evidence that Appellant had been arrested for public intoxication in 2009.

In compliance with his service plan, Appellant had taken a psychological exam, completed a drug assessment, maintained weekly contact with his caseworker, had completed parenting classes, and, with one exception, had always visited K.V. Based on his last progress report, Appellant understood that he had completed or was complying with all services that he had been ordered to perform.

Regarding possible placement of K.V., Appellant said she could be placed with the children's maternal grandfather but later agreed that the grandfather had a past incident of driving while intoxicated. Appellant explained that the grandfather was moving to California and would not be in the home but had offered to permit Appellant and the children to live in his home. Appellant also explained that he works in a racehorse corral and had a trailer nearby where he and K.V. could live. Appellant admitted that he had not asked any caseworker to inspect that trailer as a possible home for K.V., but no caseworker had ever asked to see the trailer. Appellant had previously lived in another nearby trailer but felt this one was better. He described the trailer as having working utilities and a bedroom with two beds. He was not yet living there because he was preparing it for his daughter. This was the first instance in which the caseworker had learned of the trailer and had been unable to inspect it. Appellant also mentioned the possibility of living with K.V. at his mother's two homes in Mexico, but acknowledged that he had not been there in several years.

Appellant admitted he had not paid any support or medical support, but while K.V. had

been in the Department's custody, he visited her and her siblings "all the time," and loves "the three the same." The children love each other and are very close. If K.V. lived with him, he would find a way to bring the siblings together "so that they will not distance themselves from each other." Appellant's plan was to live with K.V. here or in Mexico if necessary, and his mother had informed him that she could take care of all three children there. Appellant declared he would do everything he possibly could for K.V.

Appellant had a flexible work schedule and he intended to prepare his schedule so that he could be finished by the time K.V. returned home from school. His employer would allow him to pick K.V. up from school if required, and he would be able to transport K.V. to and from school. Appellant would be able to be present on a regular basis to take care of K.V. when she is home from school, and could find caretakers if required.

Appellant identified S.S. as a person who could assist in caring for K.V. if she was not in school and Appellant was at work. He had not thought it was necessary to inform the caseworker of this arrangement because he felt he would be responsible for his daughter's care. He had spoken with S.S. but did not about her schedule. Appellant also identified another friend, A.C., who can assist him with K.V., but he had not told the caseworker about this friend either. He reiterated that he has friends who can care for K.V. if he could not be present for some reason.

Appellant recalled the first but not the last name of K.V.'s pediatrician, and noted that all three children are patients of the same doctor. He had not attended any of K.V.'s medical exams during the preceding year.

Caseworker Jerry Rodriguez, who worked on Appellant's case until October 2013, testified that although Appellant did test positive for cocaine after allegedly kissing a woman who

"was doing cocaine," Appellant had been compliant with his drug treatment requirements and Rodriguez did not feel there were any additional services that he could have offered to assist Appellant in achieving reunification. Rodriguez was not able to determine from the test report the amount of cocaine Appellant ingested, only that the test was positive and "the results were high enough for [Appellant] to be admitted as [an] outpatient." Appellant's outpatient treatment report stated, "Client meets DSM-IV criteria for alcohol dependence as marked by his continued use despite legal, social, emotional issues caused or exacerbated by alcohol intake, as well as multiple attempts to cut down on his substance and not being able to do so." Rodriguez testified that he believes this means that Appellant "continues using drugs" and "uses alcohol consumption and it's not limited to a certain number."

Caseworker Theresa Garcia testified that Appellant had one and one-half years to comply with service requirements and demonstrate an ability to care for K.V., but he had not complied. Appellant had provided Garcia with the names of friends, but not with names of any relatives. Appellant had provided Garcia with S.S.'s name but Garcia explained that S.S. had decided not to complete a home study. Garcia was not aware that Appellant had a trailer and, although Appellant knew that he was required to provide a safe home for K.V., his reason for not acquiring that home was that he was "still saving up money to do so." She also testified that because Appellant had not successfully completed his drug treatment, he was not 100 percent compliant with his service plan.

According to Garcia, the children were removed for reasons of abuse and neglect. She agreed that Appellant was not the person abusing the children but noted that Appellant was not "physically there," and had been unable to care for the children when they were removed. As

Garcia was the second caseworker in this case, she was unsure whether there had been any consideration of placing K.V. with Appellant upon removal. Garcia believed the Department had used reasonable efforts to reunify Appellant and K.V., and that the permanency plan of unrelated adoption for all three children is in the children's best interest. In Garcia's opinion, Appellant had not demonstrated that he is ready, willing, and able to take K.V. back, and had not demonstrated an ability to provide a safe environment for her. She also noted that the two older siblings had "voiced out" their desire that they would rather be with an unrelated family and stay together, and expressed her opinion that it is best for all three children to have parents who are able and willing to keep the children together and provide them with a safe home. Garcia explained the children were in a safe and loving environment and thriving in foster care, and their educational, therapeutic, and medical and dental needs were being met. She described the three siblings as having no behavioral issues and as being "very bonded to each other."

On cross-examination, Garcia admitted that she could not guarantee that all three children would be adopted by a single family, and admitted that in March 2014, the primary permanency goal was relative adoption for K.V.'s siblings, and unrelated adoption for K.V. Garcia stated that she believed that goal was implemented when Appellant was unable to provide family members who would take all three children. Garcia admitted that at the time, Appellant had mentioned a friend who would be able to take K.V., but agreed that she had written in her report that, "[Appellant] has stated that he does not have family who are able to care for [K.V.] in the event that reunification is not possible." When Garcia asked Appellant if he had any family members who would be willing to take K.V. and participate in a home study, Appellant informed her that all his relatives live in Mexico, and he did not want K.V. to move there. Garcia did not receive any

7

information on the family members in Mexico until two weeks prior to trial and had needed that information for the purpose of considering placement with those family members. There was no placement available for K.V. but the Department would seek to place the three siblings together. If "[a]fter a certain amount of time," the Department could not place the children together, Garcia admitted that the children may be separated. Appellant was compliant with his weekly visitations, had completed the parenting class, and maintained employment to have financial stability, showed proof of employment, and provided for all of the children's basic needs. She agreed that Appellant was compliant with the requirement that he maintain contact with her at least once per week, complete a psychosocial assessment and followed all recommendations, completed the OSAR assessment and was following those recommendations, was compliant in submitting to random drug and alcohol testing. Garcia believed her report was made prior to Appellant's drug test in March 2013. Garcia disagreed that it would be in the best interest of K.V. to be placed with Appellant if he had a home and was willing and able to do so, Garcia disagreed, even if it meant putting them out in limbo for possible adoption by separate people.

After considering the evidence and witness testimony, the trial court terminated the parent-child relationship between Appellant and his child, K.V.[3] The trial court found by clear and convincing evidence that Appellant had: (1) knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child under Section 161.001(1)(D) of the Texas Family Code; (2) engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child under Section 161.001(1)(E) of the Texas Family Code; (3)

---

[3] The trial court also terminated the parent-child relationship between B.C. and his children, M.C. and A.C. An interlocutory decree of termination was rendered by the trial court against S.V. S.V. has not appealed the trial court's judgment. B.C. has filed a separate appeal.

failed to support the child in accordance with the father's ability during a period of one year ending within six months of the date of the filing of the petition under Section 161.001(1)(F) of the Texas Family Code; and (4) used a controlled substance as defined by Chapter 481 of the Texas Health and Safety Code, in a manner that endangered the health or safety of the child, and either failed to complete a court-ordered substance abuse treatment program or, after completion of a court-ordered substance abuse treatment program, continued to abuse a controlled substance under Section 161.001(1)(P) of the Texas Family Code. TEX. FAM. CODE ANN. § 161.001(1)(D), (E), (F), (P)(West 2014). The trial court also found by clear and convincing evidence that termination of Appellant's parent-child relationship is in the best interest of the child.

In five issues, Appellant challenges the legal and factual sufficiency of the evidence to support the trial court's findings. We begin our analysis by addressing Issues One, Two, Four and Five.

## SUFFICIENCY OF THE EVIDENCE

In Issue One, Appellant challenges the legal and factual sufficiency of the evidence to support its finding that Appellant placed or knowingly allowed K.V. to remain in conditions or surroundings which endangered the child's physical or emotional well-being (subsection D). In Issue Two, he complains of the sufficiency of the evidence to support termination under subsection (E) that he engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child. In Issue Five, Appellant asserts the trial court erred in finding the evidence was legally and factually sufficient to support its finding that termination of the parent-child relationship is in the child's best interest.

*Burden of Proof and Standard of Review*

9

Involuntary termination of parental rights is a grave matter implicating fundamental constitutional rights. *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985). Because of the severity and permanency of termination, as well as the elevated status of parental rights, the quantum of proof required in a termination proceeding is elevated from the preponderance of the evidence to clear and convincing evidence. *See* TEX.FAM.CODE ANN. § 161.001 (West 2014)(imposing heightened clear and convincing burden of proof in parental termination cases); *Santosky v. Kramer,* 455 U.S. 745, 747, 102 S.Ct. 1388, 1391, 71 L.Ed.2d 599 (1982); *In re B.L.D. and B.R.D.,* 113 S.W.3d 340, 353–54 (Tex.2003)(because of the severity and permanency of termination, due process requires party seeking to terminate parental rights prove necessary elements by the heightened burden of proof of clear and convincing evidence).

Therefore, in a proceeding to terminate parental rights, the petitioner must demonstrate by clear and convincing evidence that: (1) the parent committed one or more of the acts specifically set forth in Texas Family Code Section 161.001(1) as grounds for termination; and (2) that termination is in the best interest of the child. *See* TEX.FAM.CODE ANN. § 161.001 (West 2014). "Clear and convincing evidence" means the measure or degree of proof that "will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX.FAM.CODE ANN. § 101.007 (West 2014); *see In re J.F.C.,* 96 S.W.3d 256, 263 (Tex. 2002); *see also In re J.A.J.,* 243 S.W.3d 611, 616 (Tex. 2007)(contrasting the standards applied in termination proceedings and the standards applied in modification proceedings). We strictly scrutinize termination proceedings and construe any statutes authorizing involuntary termination in favor of the parent. *Holick*, 685 S.W.2d at 20-21.

10

In conducting a legal sufficiency review in a termination case, we consider all of the evidence in the light most favorable to the finding "to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In re J.P.B.,* 180 S.W.3d 570, 573 (Tex. 2005), *quoting In re J.F.C.,* 96 S.W.3d at 266. We give deference to the fact finder's conclusions and presume the fact finder resolved any disputed facts in favor of its findings, so long as a reasonable fact finder could do so. *Id.; In re J.F.C.,* 96 S.W.3d at 266. We disregard any evidence that a reasonable fact finder could have disbelieved, or found to have been incredible, but we do not disregard undisputed facts. *In re J.P.B.,* 180 S.W.3d at 573; *In re J.F.C.,* 96 S.W.3d at 266.

In conducting a factual sufficiency review in a termination case, we must give due deference to the fact finder's findings, and we cannot supplement such judgment with our own. *In re H.R.M.,* 209 S.W.3d 105, 108 (Tex. 2006). We determine whether, "in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *In re H.R.M.,* 209 S.W.3d at 108; *In re J.F.C.,* 96 S.W.3d at 266.

*Statutory Predicate*

A parent's rights may be involuntarily terminated through proceedings brought under Section 161.001 of the Texas Family Code. *See* TEX.FAM.CODE ANN. § 161.001 (West 2014). Under that provision, the Department was required to (1) establish one or more of the statutory acts or omissions enumerated as grounds for termination, and (2) prove that termination is in the best interest of the child. *See id.* Both elements must be established, and termination may not be

11

based solely on the best interest of the child as determined by the trier of fact. *See Texas Department of Human Services v. Boyd,* 727 S.W.2d 531, 533 (Tex. 1987).

Only one predicate finding under Section 161.001(1) is necessary to support a judgment of termination when there is also a finding that termination is in the child's best interest. *In re A.V.,* 113 S.W.3d 355, 362 (Tex. 2003); *Perez v. Texas Dept. of Protective & Regulatory Services*, 148 S.W.3d 427, 433-34 (Tex. App. – El Paso 2004, no pet.). Consequently, when an unchallenged finding will support an order of termination, it is unnecessary to review an appellant's factual sufficiency arguments. *Perez*, 148 S.W.3d at 434.

Section 161.001(1)(D) of the Texas Family Code permits the termination of a parent-child relationship if the parent has knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child. TEX. FAM. CODE ANN. § 161.001(1)(D)(West 2014). Section 161.001(1)(E) permits a court to terminate that relationship if a parent has engaged in conduct or knowingly placed a child with persons who engaged in conduct which endangers the physical or emotional well-being of the child. TEX. FAM. CODE ANN. § 161.001(1)(E)(West 2014).

Both subsections (D) and (E) require proof of endangerment, which means to expose to loss or injury, or to jeopardize a child's emotional or physical health. *Doyle v. Texas Department of Protective and Regulatory Services,* 16 S.W.3d 390, 394 (Tex.App. – El Paso 2000, pet. denied). While endangerment means more than a threat of metaphysical injury or the possible ill effects of a less-than-ideal family environment, it is not necessary that the conduct be directed at the child or that the child actually suffer injury. *Doyle,* 16 S.W.3d at 394. Subsections (D) and (E) differ in one respect: the source of the physical or emotional endangerment to the child. *See*

12

*In re B.S.T.,* 977 S.W.2d 481, 484 (Tex.App. – Houston [14th Dist.] 1998, no pet.); *In re S.H.A.,* 728 S.W.2d 73, 83–84 (Tex.App. – Dallas 1987, writ ref'd n.r.e.). Subsection (D) requires a showing that the environment in which the child is placed endangered the child's physical or emotional health. *Doyle,* 16 S.W.3d at 394. Conduct of a parent or another person in the home can create an environment that endangers the physical and emotional well-being of a child as required for termination under subsection (D). *See In re W.S.,* 899 S.W.2d 772, 776 (Tex.App. – Fort Worth 1995, no writ)("environment" refers to the acceptability of living conditions). Inappropriate, abusive, or unlawful conduct by persons who live in the child's home or with whom the child is compelled to associate on a regular basis in his home is a part of the "conditions or surroundings" of the child's home under subsection (D). *In re M.R.J.M.,* 280 S.W.3d 494, 502 (Tex.App. – Fort Worth 2009, no pet.). The fact finder may infer from past conduct endangering the child's well-being that similar conduct will recur if the child is returned to the parent. *Id.* Thus, subsection (D) addresses the child's surroundings and environment rather than parental misconduct, which is the subject of subsection (E). *Doyle,* 16 S.W.3d at 394; *In re B.S.T.,* 977 S.W.2d at 484; *In re S.H.A.,* 728 S.W.2d at 84.

Under subsection (E), the cause of the danger to the child must be the parent's conduct alone, as evidenced not only by the parent's actions but also by the parent's omission or failure to act. *Doyle,* 16 S.W.3d at 395; *In re B.S.T.,* 977 S.W.2d at 484; *In re S.H.A.,* 728 S.W.2d at 83–84. The conduct to be examined includes what the parents did both before and after the child was born. *In re D.M.,* 58 S.W.3d 801, 812 (Tex.App. – Fort Worth 2001, no pet.); *Dupree v. Tex. Dep't of Protective & Regulatory Servs.,* 907 S.W.2d 81, 84 (Tex.App. – Dallas 1995, no writ). To be relevant, the conduct does not have to have been directed at the child, nor must actual harm result

to the child from the conduct. *Dupree,* 907 S.W.2d at 84; *In re C.D.,* 664 S.W.2d 851, 853 (Tex.App. – Fort Worth 1984, no writ). Additionally, termination under subsection (E) must be based on more than a single act or omission; a voluntary, deliberate, and conscious course of conduct by the parent is required. *In re K.M.M.,* 993 S.W.2d 225, 228 (Tex.App. – Eastland 1999, no pet.). The specific danger to the child's well-being need not be established as an independent proposition, but may be inferred from parental misconduct. *In re N.K.,* 99 S.W.3d 295, 300 (Tex.App. – Texarkana 2003, no pet.). Evidence of criminal conduct, convictions, and imprisonment and its effect on a parent's life and ability to parent may establish an endangering course of conduct. *In re J.T.G.,* 121 S.W.3d 117, 133 (Tex.App. – Fort Worth 2003, no pet.). Imprisonment alone does not constitute an endangering course of conduct but it is a fact properly considered on the endangerment issue. *Boyd,* 727 S.W.2d at 533–34; *In re R.W.,* 129 S.W.3d 732, 743–44 (Tex.App. – Fort Worth 2004, pet. denied). Routinely subjecting a child to the probability that she will be left alone because her parent is in jail, endangers the child's physical and emotional well-being. *See In re S.D.,* 980 S.W.2d 758, 763 (Tex.App. – San Antonio 1998, pet. denied). However, "the relationship of the parent and child, as well as efforts to improve or enhance parenting skills, are relevant in determining whether a parent's conduct results in 'endangerment' of the child under Section 161.001(1)(E), even where the parent is incarcerated." *In re D.T.,* 34 S.W.3d 625, 640 (Tex.App. – Fort Worth 2000, pet. denied).

We have carefully reviewed the entire record. Considering the evidence in the light most favorable to the trial court's findings, a reasonable fact finder could have formed a firm belief or conviction that pursuant to Section 161.001(1)(E), Appellant engaged in conduct or knowingly placed the child with persons who engaged in conduct that endangered the children's physical or

14

emotional well-being. Thus, the evidence is legally sufficient to support the trial court's finding under Section 161.001(1)(E), and giving due deference to the trial court's findings, because the disputed evidence that a reasonable fact finder could not have credited in favor of the finding is not so significant that the trial court could not reasonably have formed a firm belief or conviction, the evidence is also factually sufficient. TEX. FAM. CODE ANN. § 161.001(1)(E)(West 2014).

Issue Two is overruled. Because our review of the record demonstrates that the trial court's predicate findings under Section 161.001(1)(E) is supported by legally sufficient evidence and supports the trial court's order of termination, we need not consider Issues One, Three, and Four. TEX. FAM. CODE ANN. § 161.001(1)(E)(West 2014).

*Best Interest of the Child*

We next consider Issue Five in which Appellant challenges the legal and factual sufficiency of the evidence to support the trial court's best-interest finding. *See In re A.V.,* 113 S.W.3d at 362; *Perez*, 148 S.W.3d at 433-34. A determination of best interest necessitates a focus on the child, not the parent. *See In re R.F.,* 115 S.W.3d 804, 812 (Tex.App. – Dallas 2003, no pet.). We therefore restrict our consideration to the trial court's determination that termination is in Appellant's child's best interest.

There is a strong presumption that a child's best interests are served by maintaining the parent-child relationship. *In re L.M.,* 104 S.W.3d 642, 647 (Tex.App. – Houston [1st Dist.] 2003, no pet.). Termination of the parent-child relationship is not justified when the evidence shows merely that a parent's failure to provide a more desirable degree of care and support of the child is due solely to misfortune or the lack of intelligence or training, and not to indifference or malice. *Clark v. Dearen,* 715 S.W.2d 364, 367 (Tex.App. – Houston [1st Dist.] 1986, no writ).

15

The Texas Supreme Court has identified nine non-exhaustive factors that are relevant in determining whether termination of parental rights is in the best interest of the child. *Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976). The *Holley* factors include: (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parenting abilities of the parties seeking custody; (5) the programs available to assist the parties seeking custody; (6) the plans for the child by the parties seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omission committed by the parent which may indicate the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions committed by the parent. *Holley*, 544 S.W.2d at 371-72. The determination of a child's best interest does not require proof of any unique set of factors, and it does not limit proof to any specific factors. *Id.* Permanence has also long been considered of paramount importance in considering a child's present and future needs. *See Dupree,* 907 S.W.2d at 87.

K.V. did not testify regarding her desires. We do know, however, that the three children are bonded and want to remain together. Appellant routinely left his daughter with Mother, knowing that Mother had issues of mental health. In fact, her condition led to the separation. While Appellant testified of friends who were willing to help, he had not provided full information to the Department and one had rejected a home study. He had little focus on providing a home for his daughter other than a trailer, which he also neglected to mention to the caseworker. K.V. is in a stable placement with her siblings and is clearly thriving. Moreover, the same evidence of acts or omissions used to establish grounds for termination under Section 161.001(1) may be probative in determining whether termination of parental rights is in the best interest of the child. *In re*

*C.H.,* 89 S.W.3d 17, 28 (Tex. 2002); *In re L.M.,* 104 S.W.3d at 647.

Having considered the *Holley* factors and evidence of Appellant's acts or omissions which formed the basis for the termination of Appellant's parent-child relationship, applying the requisite standards of review, and giving due regard to the elevated burden of proof, we conclude that a reasonable fact finder could have reasonably formed a firm belief or conviction that termination was in the best interest of the child.   We overrule Issue Five, and affirm the judgment of the trial court.

                                         ANN CRAWFORD McCLURE, Chief Justice

October 8, 2014

Before McClure, C.J., Rivera, and Rodriguez, JJ.
Rivera, J., not participating

17