

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| IN THE INTEREST OF | § | No. 08-22-00247-CV |
| R.A.B. Jr and M.M.G.-B., | § | Appeal from the |
| Children. | § | 394th Judicial District Court |
| | § | of Brewster County, Texas |
| | § | (TC# FMB21570) |

**MEMORANDUM OPINION**

Appellant J.G. appeals the trial court's judgment terminating her parental rights and appointing the Department of Family and Protective Services (DFPS) as sole managing conservator of her children, R.A.B. Jr and M.M.G.-B.[1] Such parental rights were terminated on predicate grounds of child endangerment, failure to comply with a family service plan, and the unlawful use of a controlled substance. *See* TEX. FAM. CODE ANN. §§ 161.001(b)(1)(D), (E), (O), and (P). Along with these grounds, the trial court also determined both, such termination of rights was in the children's best interest, and that DFPS should be appointed the children's permanent managing conservator. *See id*. §§ 161.001(b)(2), 161.207. In six issues on appeal, J.G. challenges

---

[1] To protect the privacy of the parties, we refer to them by their initials. *See* TEX. FAM. CODE ANN. § 109.002(d); TEX. R. APP. P. 9.8(a), (b)(2).

the legal and factual sufficiency of the evidence to support the predicate grounds for termination, the finding regarding the children's best interest, and the conservatorship appointment. We affirm the trial court's judgment.

## I. BACKGROUND

DFPS filed an original petition on June 4, 2021. The same day, the trial court ordered the removal of both children and named DFPS their temporary managing conservator.

### A. Trial testimony

A bench trial was held in November 2022, wherein DFPS sought to terminate J.G. and the children's father's parental rights as to both children.[2] R.A.B. Jr and M.M.G.-B. were thirteen and twelve years old, respectively. At trial, the evidence centered on J.G.'s ongoing drug use, lack of participation in court-ordered services, and the children's current placements and needs. Key witness testimony is summarized below.

#### (1) *The caseworker's testimony*

DFPS caseworker Melin Hernandez testified that DFPS began an investigation after receiving a report alleging that J.G. and her partner were at a known drug house with R.A.B. Jr and M.M.G.-B. The reporter further alleged that J.G.'s partner was seen blowing into the children's faces. During the ensuing investigation, the children were each administered a court ordered hair follicle drug test. R.A.B. Jr's drug test results were positive for amphetamines and methamphetamine, which are penalty group 1 narcotics. TEX. HEALTH & SAFETY CODE ANN. § 481.102. M.M.G.-B.'s drug test results were similarly positive for methamphetamine. DFPS then sought the immediate removal of the children from J.G.'s custody, which the court ordered. J.G.'s

---

[2] The children's father did not appeal the trial court's order and is not a party to the present appeal.

in-person visitation was suspended until she submitted a clean drug test. Additionally, the court named DFPS as the children's temporary sole managing conservator.

In July 2021, J.G. undertook a hair follicle drug test which was positive for amphetamines and methamphetamine metabolite. J.G. claimed the results were not accurate because the specimen was taken with dirty scissors. Hernandez discussed the family service plan with J.G. The family service plan required J.G. to take the following actions or receive the following services: to attend parenting classes; to submit to random drug testing to demonstrate sobriety; to undergo a psychological evaluation and to follow recommendations; to permit an OSAR assessment regarding substance abuse and to follow recommendations; and to receive a psychiatric evaluation. J.G. was partially compliant with the family service plan. She underwent a psychological evaluation and OSAR assessment. J.G. attended and was discharged from the OSAR recommended outpatient treatment program.

J.G. partially complied with random drug testing but failed to demonstrate sobriety. In October 2021, J.G. underwent a hair follicle drug test that was positive for amphetamines and methamphetamine. In December 2021, J.G. missed a urine drug test, claiming she lacked transportation. In February 2022, J.G. missed another drug test. In March 2022, J.G. underwent a hair follicle drug test that was positive for amphetamines and methamphetamine. In June 2022, J.G. underwent a urine drug test that was positive for amphetamines and methamphetamine. When confronted with the positive results, J.G. denied all drug use.

In July 2022, the trial court ordered J.G. to attend in-patient drug rehabilitation. J.G. did not comply with this order. J.G. claimed she was unable to attend the program because she cared for her elderly and sick mother. In October 2022, J.G. underwent a urine drug test in which she

tested positive for amphetamines and methamphetamine. Hernandez generally described that J.G. denied she had a substance abuse issue throughout the pendency of the case.

Although J.G. was unable to have in-person visitation with the children, Hernandez further testified she continued to be involved with them through virtual visitations. Those visits appeared positive for the children.

Hernandez also testified the children's father reported that he did not have much contact with them before the case began. The father and J.G. lived in separate households. Hernandez noted that he was not implicated in the initial allegations that began DFPS's investigation. In November 2021, however, the father was arrested and remained in jail awaiting placement in a drug rehabilitation program for several months. In August 2022, the father was released from jail after having completed the drug rehabilitation program. Hernandez noted that the father's contact with the children throughout the case had been positive but inconsistent. Hernandez reported that the father expressed that he was not then able to provide what the children needed, but nonetheless, he wanted what was best for them.

Regarding the children, Hernandez testified that R.A.B. Jr was currently placed in an emergency shelter. Current plans are for him to be placed for adoption should the court ultimately appoint the DFPS as permanent managing conservator. Hernandez admitted, however, that R.A.B. Jr expressed he was adamantly opposed to being adopted. Hernandez also testified that DFPS hoped to reduce R.A.B. Jr's need for medication through therapy. Hernandez testified that M.M.G.-B. was currently placed in a foster home and, should she remain in DFPS's permanent managing conservatorship, it planned for her to remain in the same foster home and, eventually, be similarly adopted. DFPS also planned for M.M.G.-B. to continue with ongoing therapy.

Ultimately, Hernandez testified that J.G. failed to modify the behavior that led to "the removal of her children because it was drug use mainly, and she continued to test positive." Hernandez opined that terminating J.G.'s parental rights was in the children's best interest.

**(2)** *The counselor's testimony*

Corine Dominguez, the licensed chemical dependency counselor who provided outpatient services to J.G., testified that J.G. was referred to the outpatient program because of the OSAR assessment. J.G. was admitted to the outpatient program on October 12, 2021. This program required her to complete ten to twelve individual sessions. Although not required, Dominguez also encouraged J.G. to attend group therapy. J.G. did not attend any group therapy sessions in the outpatient program. J.G. completed the required individual sessions and was discharged as maximum benefit achieved on February 23, 2022.

Dominguez testified the OSAR assessment was based on self-reporting and the outpatient program did not perform any drug testing. J.G. reported to Dominguez that, at the time of discharge, she had been sober for eight months. The plan Dominguez used for J.G. would have been significantly different had she admitted to active drug use.

**(3)** *The CASA volunteer's testimony*

Pabla Gonzalez, a child advocate, testified that she was assigned to the case approximately three weeks before trial. Gonzalez met with both children and reviewed documentation before trial. Gonzalez testified that she had sufficient information to formulate an opinion on the day of trial.

Gonzalez opined that termination of parental rights was in the best interest of the children. She stated J.G. did not complete her required services and that maintaining contact between J.G. and the children would require them to receive more therapy in the future. Gonzalez testified R.A.B. Jr was hesitant towards adoption, but M.M.G.-B. expressed no issues with adoption.

5

**(4)  *J.G.'s testimony***

J.G. testified that she visited the children for an hour twice a week. On top of official visitation, she occasionally exchanged messages with M.M.G.-B. through Instagram. J.G. testified she wanted the children to return home, and they have told her they wanted the same. J.G. opined that termination of parental rights was not in the best interests of her children.

**(5)  *The healthcare providers' testimony***

Danielle Fisher, R.A.B. Jr's psychiatric nurse practitioner, testified she had been providing R.A.B. Jr with medication management since May 2022. Fisher performed a psychiatric evaluation on R.A.B. Jr. Based on her evaluation, she prescribed medication, a stimulant for R.A.B. Jr., to address his attention deficit disorder. Fisher testified that "there is always a concern" when a stimulant is prescribed to a child in a household with a known drug user. During her treatment of R.A.B. Jr., Fisher added a mood stabilizing medication because R.A.B. Jr had incidents of aggression. At the time of trial, R.A.B. Jr was doing well on his medications.

Fisher also testified the treatment goals for R.A.B. Jr included individual therapy and case management to teach him coping skills. As R.A.B. Jr learned coping skills, Fisher described that she would taper him off and eventually discontinue the medications. Until he received significant therapy, however, Fisher believed R.A.B. Jr needed the medication. Fisher testified there was a concern that without medication R.A.B. Jr would revert to engaging in aggressive behaviors.

Kesia Flores, R.A.B. Jr's group therapist, testified R.A.B. Jr was admitted to outpatient services on August 24, 2022. R.A.B. Jr's treatment plan focused on mood dysregulation, violence risk, trauma, and risk of self-mutilation. The goal of therapy was to build R.A.B. Jr's self-awareness, coping skills, and self-processing of his experiences, thoughts, and emotions. R.A.B.

Jr was discharged from outpatient services on October 14, 2022. After discharge, he was referred to an after-care provider.

Lizette Munoz, M.M.G.-B.'s counselor, testified she provides M.M.G.-B. cognitive behavior therapy every two weeks. Munoz testified M.M.G.-B. had unhealthy thinking styles which they were addressing through therapy. Specifically, Munoz was working to build M.M.G.- B's self-esteem and self-confidence. In her therapy, M.M.G.-B. discussed her relationships. According to Munoz, "[t]here was really no impact from Mother on [M.M.G.-B.]" Munoz added that she did not believe there was a strong emotional connection between M.M.G.-B. and J.G.

Munoz testified her therapy would continue, specifically working on M.M.G.-B.'s assertive communication and adjusting her interactions with R.A.B. Jr. Munoz did not believe it was appropriate to place the children together until M.M.G.-B. was able to assert and empower herself.

## B. The trial court's ruling

At the close of evidence, the trial court terminated J.G.'s parental rights to both children, finding clear and convincing evidence supported termination based on subsections (D), (E), (O), and (P) of § 161.001(b)(1) of the Texas Family Code. The trial court also found that terminating J.G.'s parental rights was in each child's best interest. The trial court did not terminate the children's father's parental rights. Lastly, the trial court named DFPS the permanent managing conservator of the children.

J.G.'s appeal followed.

7

## II.   ISSUES ON APPEAL

In six issues, J.G. challenges the legal and factual sufficiency of the evidence to sustain termination on each of the statutory predicates, to sustain the trial court's finding that termination was in the best interest of the children, and to sustain the trial court's appointment of DFPS as the children's permanent managing conservator. Although we alter the presentation order, we address each issue in turn.

## III.   DISCUSSION

This case addresses the natural rights of a parent to their children, which are of a constitutional magnitude but not absolute. *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985). A court may order termination of the parent-child relationship if it finds by clear and convincing evidence: (1) that the parent has committed one or more of the acts specifically set out in § 161.001(b)(1) of the Texas Family Code; and (2) that termination is in the best interest of the child. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(A)–(U), (b)(2); *In re J.L.*, 163 S.W.3d 79, 84 (Tex. 2005). Evidence is clear and convincing if it is of "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE ANN. § 101.007.

While the existence of one predicate ground is sufficient to uphold the termination of parental rights, a court must always review, as part of due process, the sufficiency of findings under subsections (D) and (E). *In re N.G.*, 577 S.W.3d 230, 237 (Tex. 2019). This is required because either of those two findings can affect a parent's parental rights to their other children. *Id.* "[T]he reviewing court must undertake 'an exacting review of the entire record with a healthy regard for the constitutional interests at stake.'" *In re A.B.*, 437 S.W.3d 498, 503 (Tex. 2014) (quoting *In re C.H.*, 89 S.W.3d 17, 26 (Tex. 2002)).

### A. Standard of review

In a legal sufficiency challenge to a parental termination, the court of appeals "must take into consideration whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the matter on which the State bears the burden of proof." *In re J.F.C.*, 96 S.W.3d 256, 265-66 (Tex. 2002). A reviewing court should consider all the evidence in the light most favorable to the finding. *Id*. Considering evidence in the light most favorable means "a reviewing court must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so." *Id*. While any evidence contrary to the findings which a reasonable factfinder could have disbelieved is disregarded, the reviewing court should not disregard undisputed facts. *Id*.

In a factual sufficiency challenge to a parental termination, a finding must be upheld "if the evidence is such that a reasonable jury could form a firm belief or conviction that grounds exist for termination under Texas Family Code sections 161.001 and 161.206(a)." *In re C.H.*, 89 S.W.3d 17, 18-19 (Tex. 2002). The reviewing court must consider all evidence the factfinder could reasonably have found to be clear and convincing. *In re K.A.C.*, 594 S.W.3d 364, 372 (Tex. App.— El Paso 2019, no pet.). When considering disputed evidence, a reviewing court must consider whether a reasonable factfinder could not have resolved that dispute in favor of its findings. *Id*. If such disputed evidence is so significant a factfinder could not have reasonably formed a firm belief of conviction, then the evidence is factually insufficient. *Id*.

### B. The predicate grounds for termination

In her first four issues, J.G. challenges the trial court's findings that clear and convincing evidence supported the termination of her parental rights based on the predicate grounds in subsections (D), (E), (O), and (P) of § 161.001(b)(1) of the Texas Family Code.

### (1)  *The endangerment predicate findings*

In her first two issues, J.G. challenges the sufficiency of the evidence to support the trial court's termination findings under subsections (D) and (E), respectively. Both grounds involve allegations of endangerment. TEX. FAM. CODE ANN. § 161.001(b)(1)(D), (E). Relative to these subsections, endangerment means "to expose to loss or injury or to jeopardize a child's emotional or physical health." *Doyle v. Tex. Dep't Protective Regul. Servs.*, 16 S.W.3d 390, 394 (Tex. App.—El Paso 2000, pet. denied). Endangerment means more than a threat of metaphysical injury or the possible ill effects of an unideal family environment. *Id*. It is not, however, necessary that the conduct be directed at the child or that the child suffer actual injury. *Id*. The bulk of the evidence presented at trial focused upon subsection (E). For that reason, we first address subsection (E).

### (a)  *The subsection (E) predicate finding*

J.G.'s second issue challenges the sufficiency of the evidence to support the trial court's termination finding under subsection (E) of § 161.001(b)(1). To terminate parental rights under subsection (E), a trier of fact must find by clear and convincing evidence that the parent "engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child." TEX. FAM. CODE ANN. § 161.001(b)(1)(E). Under subsection (E), DFPS must prove the parent's conduct, including their omissions and failure to act, endangered the child. *Doyle*, 16 S.W.3d at 395. For termination under subsection (E), a voluntary, deliberate, and conscious course of conduct by the parent is required. *In re S.R.*, 452 S.W.3d 351, 360 (Tex. App.—Houston [14th Dist.] 2014, pet. denied). Under subsection (E), the endangering course of conduct may occur either before or after the child is removed by the State. *In re K.A.C.*, 594 S.W.3d at 372.

A parent's use of illegal drugs and the effect on her life and parenting ability may establish an endangering course of conduct under subsection (E). *In re J.O.A.*, 283 S.W.3d 336, 346 (Tex. 2009); *In re K.A.C.*, 594 S.W.3d at 373; *In re S.R.*, 452 S.W.3d at 361. "Further, evidence that the parent continued to use illegal drugs even though the parent knew her parental rights were in jeopardy is conduct showing a voluntary, deliberate, and conscious course of conduct, which by its nature, endangers a child's well-being." *In re K.A.C.*, 594 S.W.3d at 373. To support a parental termination, a parent's illegal drug use must have a causal connection to the alleged endangerment of the child. *Interest of L.C.L.*, 599 S.W.3d 79, 84 (Tex. App.—Houston [14th Dist.] 2020, pet. denied).

Here, both children underwent hair follicle drug testing, and they both tested positive for methamphetamine. The children were then removed from J.G.'s custody and DFPS became their temporary sole managing conservator. After removal, J.G. also underwent a hair follicle drug test and her results proved positive for amphetamines and methamphetamine metabolite.

Thereafter, J.G. was ordered to undergo random drug tests to demonstrate sobriety. In October 2021, J.G. underwent a hair follicle drug test that was positive for amphetamines and methamphetamine. J.G. missed a drug test in December 2021 and another in February 2022. In March 2022, J.G. underwent a hair follicle drug test that was positive for amphetamines and methamphetamine. In June 2022, J.G. underwent a urine drug test that was positive for amphetamines and methamphetamine. Finally, in October 2022, J.G. underwent a urine drug test that was positive for amphetamines and methamphetamine. Throughout the pendency of this case, J.G. continued to use methamphetamine despite the trial court's order requiring a clean drug test before she could have in-person visitation with the children. Further, J.G. was aware that continued drug use throughout the pendency of this case could result in the termination of her parental rights.

11

Viewing the evidence with the appropriate standards, we find that, the evidence presented could lead a reasonable trier of fact to determine that J.G.'s drug use endangered R.A.B. Jr and M.M.G.-B.; and such use exposed the children to drugs such that R.A.B Jr. was positive for amphetamines and methamphetamine and M.M.G.-B. was positive for methamphetamine. A reasonable factfinder could determine R.A.B. Jr and M.M.G.-B.'s positive drug tests were caused by J.G.'s drug use.

Despite being ordered by the trial court to address substance abuse issues, J.G. continued to use drugs throughout the pendency of this case. From the evidence admitted at trial, the trial court could reasonably conclude that J.G. used drugs prior to the removal and endangered the well-being of her children. Further the trial court could reasonably conclude that J.G. would continue to use drugs and endanger the children's well-being in the future. *See K.A.C.*, 594 S.W.3d at 373 (holding that a reasonable factfinder could determine that a parent's positive drug tests during the pendency of the case indicate the parent would continue to use illegal drugs and endanger the children in the future).

J.G. argues the drug test results are all suspect and unreliable. The drug tests results were admitted at trial without objection. The only issue raised at trial was a typo in J.G.'s October 2022 test results. After the trial court opined that such deficiency would go to the weight of such evidence, J.G. withdrew her objection. Because J.G. did not raise her objections at trial, they are waived on appeal. TEX. R. APP. P. 33.1.

J.G. also argues that DFPS has endangered R.A.B. Jr through the conservatorship. The focus of subsection (E) is on the conduct of the parent whose parental rights are being terminated, not on DFPS. *See* TEX. FAM. CODE ANN. §161.001(b)(1) (listing the predicate grounds to terminate the parent-child relationship).

Therefore, viewing the evidence with deference to the factfinder's conclusions and indulging every reasonable inference, we hold there is legally sufficient evidence to support the trial court's finding that J.G. engaged in a course of conduct endangering to the children's physical and emotional well-being under subsection (E). Accordingly, we find that the evidence is legally sufficient to support the trial court's finding.

Further, we conclude that after considering all the evidence, the evidence presented permits a reasonable factfinder to form a firm belief or conviction that J.G. engaged in an endangering course of conduct. Therefore, there is factually sufficient evidence to support the trial court's predicate finding under subsection (E) of § 161.001(b)(1) of the Family Code.

We overrule J.G.'s second issue.

### (b) *The subsection (D) predicate finding*

J.G.'s first issue challenges the sufficiency of the evidence to support the trial court's termination finding under subsection (D) of § 161.001(b)(1). To terminate parental rights under subsection (D), a trier of fact must find by clear and convincing evidence that the parent "knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child." TEX. FAM. CODE ANN. §161.001(b)(1)(D); *Doyle*, 16 S.W.3d at 394. The environment in which a child is placed includes both the suitability of the child's living conditions and the conduct of parents or other persons who are regularly placed within the child's home. *M.V. v. Tex. Dept. Fam. Protective Servs.*, 446 S.W.3d 879, 889 (Tex. App.—El Paso 2014, no pet.). Subsection (D) focuses upon the children's environment before they are removed. *In re I.D.G.*, 579 S.W.3d 842, 850 (Tex. App.—El Paso 2019, pet. denied); *In re S.R.*, 452 S.W.3d at 360.

At trial, Hernandez, the DFPS case worker, testified DFPS began its investigation after receiving allegations that J.G. and her partner had been with the children in a known drug house. The allegation further stated that J.G.'s partner had blown air into the children's faces and mouths. As part of the subsequent investigation, the children underwent a court-ordered hair follicle drug test. R.A.B. Jr tested positive for amphetamines and methamphetamine. M.M.G.-B. tested positive for methamphetamine. Following the positive drug tests, the children were removed from J.G.'s care. Hernandez testified that upon removal, the children had lice in their hair, they had missed several immunizations, and they both had multiple cavities.

Viewing all the evidence in the light most favorable to the trial court's judgment and recognizing that the factfinder is the sole arbiter of the witnesses' credibility and demeanor, we hold there is legally sufficient evidence to support the trial court's finding that J.G. knowingly placed the children in an environment that endangered their physical and emotional well-being under subsection (D). *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D); *Interest of M.D.M.*, 579 S.W.3d 744, 766 (Tex. App.—Houston [1st Dist.] 2019, no pet.) (determining that evidence of a drug use in the children's presence is relevant to the children's living environment and conditions). Accordingly, we find that the evidence is legally sufficient to support the trial court's finding. Further, we conclude that after considering all the evidence, the evidence presented at trial permits a reasonable factfinder to form a firm belief or conviction that J.G. knowingly placed the children in an environment that endangered their physical and emotional well-being. Therefore, there is factually sufficient evidence to support the trial court's predicate finding under subsection (D) of § 161.001(b)(1) of the Family Code.

We overrule J.G.'s first issue.

### (2) *The remaining predicate findings*

14

J.G.'s third and fourth issues challenge the sufficiency of the evidence to support the trial court's termination finding under subsections (O) and (P). Because we find sufficient evidence supports the trial court's termination findings under (D) and (E), we recognize that we have discretion to avoid analysis of the remaining predicate findings. *See In re L.D.C.*, 622 S.W.3d 63, 70 (Tex. App.—El Paso 2020, no pet.) (declining to address additional grounds based on TEX. R. APP. P. 47.1 where (D) and (E) were found sufficient). Here, however, we decline to exercise that discretion because we conclude the remaining grounds provide further context relevant to the best interest analysis under J.G.'s fifth issue.

### (c)   *The subsection (O) predicate finding*

J.G.'s third issue challenges the sufficiency of the evidence to support the trial court's termination finding under subsection (O) of § 161.001(b)(1). To terminate parental rights under subsection (O), a trier of fact must find by clear and convincing evidence that the parent:

> failed to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of the child who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than nine months as a result of the child's removal from the parent under Chapter 262 for the abuse or neglect of the child[.]

TEX. FAM. CODE ANN. § 161.001(b)(1)(O). Here, the trial court terminated J.G.'s parental rights after R.A.B. Jr and M.M.G.-B. were in the temporary managing conservatorship of DFPS for 18 months.

### i.   *Abuse and neglect*

J.G. argues the children were not removed from her care under Chapter 262 for either abuse or neglect. The Texas Supreme Court has held that in subsection (O) the phrase "removal under chapter 262 for abuse or neglect" is used broadly. *In re E.C.R.*, 402 S.W.3d 239, 248 (Tex. 2013). Under Chapter 262, abuse and neglect includes the risks of a child's environment. *Id*. "If a parent

has neglected, sexually abused, or otherwise endangered her child's physical health or safety, such that initial and continued removal are appropriate, the child has been 'remov[ed] from the parent under Chapter 262 for the abuse or neglect of the child.'" *Id.* (citing TEX. FAM. CODE ANN. § 161.001(b)(1)(O) (alteration in the original)).

As discussed above, there is legally and factually sufficient evidence that J.G. herself engaged in conduct or knowingly placed the children with persons who engaged in conduct which endangered the physical or emotional well-being of R.A.B. Jr and M.M.G.-B. The children's positive drug tests coupled with J.G.'s continued drug use endanger the children's health such that continued removal is appropriate. Considering all the evidence in the light most favorable to the finding, a reasonable factfinder could have formed a firm belief or conviction that the children were removed for neglect or abuse under Chapter 262. Further, considering all evidence the factfinder could have reasonably found by clear and convincing evidence that the children were removed for neglect or abuse under Chapter 262.

### ii.  *Failure to comply with a court order*

DFPS developed a family service plan which required J.G. to undergo random drug testing to demonstrate sobriety. J.G. failed to demonstrate sobriety because she missed several drug tests, and the results of each submitted test was positive for amphetamines and methamphetamine. Further, in July 2022, the trial court ordered J.G. attend in-patient drug rehabilitation. J.G. did not comply with this order.

J.G. argues that she complied with the July 2021 family service plan and the plan was never amended. In the July 2022 order, however, the trial court ordered, "that the plan of service issued by this Court shall continue in full force and effect subject to the following modifications: [J.G.] is **ORDERED** to participate in and attend in-patient drug rehabilitation."

16

J.G. does not dispute that she failed to attend in-patient drug rehabilitation but instead argues she was unable to attend due to impossibility. She attempts to raise the statutory affirmative defense of § 161.001(d) and argues termination cannot be ordered under subsection (O). *See* TEX. FAM. CODE ANN. § 161.001(d) (prohibiting termination under subsection (O) when a parent proves by preponderance of evidence that "(1) the parent was unable to comply with specific provisions of the court order; and (2) the parent made a good faith effort to comply with the order and the failure to comply with the order is not attributable to any fault of the parent"). The parent attempting to raise § 161.001(d) carries the burden of proof to establish its applicability. *Interest of L.E.R.*, 650 S.W.3d 771, 788-89 (Tex. App.—Houston [14th Dist.] 2022, no pet.). J.G. did not raise this affirmative defense at trial. Further, J.G.'s argument at trial did not mention or explain any excuse or reason for her failure to complete the court ordered requirements. We find this defense was waived because J.G. did not raise it at trial and provided no evidence to support the defense. *See Interest of D.L.W.*, No. 14-22-00654-CV, 2023 WL 1460548, at *5 (Tex. App.— Houston [14th Dist.] Feb. 2, 2023, no pet. h.) (mem.op.) ("the defense cannot be raised for the first time on appeal").

Therefore, we hold that legally and factually sufficient evidence supports the trial court's finding that J.G. failed to comply with the provisions of a court order that specifically established the actions necessary for her to obtain the return of R.A.B. Jr and M.M.G.-B., who had been in the temporary managing conservatorship of DFPS for not less than nine months because of the children's removal under Chapter 262 for abuse and neglect. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(O).

We overrule J.G.'s third issue.

### (d) The subsection (P) predicate finding

J.G.'s fourth issue challenges the sufficiency of the evidence to support the trial court's termination finding under subsection (P) of § 161.001(b)(1). To terminate parental rights under subsection (P), a trier of fact must find by clear and convincing evidence that the parent has:

> used a controlled substance, as defined by Chapter 481, Health and Safety Code, in a manner that endangered the health or safety of the child, and: (i) failed to complete a court-ordered substance abuse treatment program; or (ii) after completion of a court-ordered substance abuse treatment program, continued to abuse a controlled substance.

TEX. FAM. CODE ANN. § 161.001(b)(1)(P).

Subsection (P) requires specific proof that the parent used a control substance in a manner that endangered the child's health and safety. *In re J.E.H.*, 384 S.W.3d 864, 871 (Tex. App.— San Antonio 2012, no pet.). As discussed above, J.G.'s use of drugs during the pendency of this case coupled with the children's positive drug test results provide specific proof that J.G. used a controlled substance in a manner that endangered the health or safety of the children. In July 2022, the trial court ordered J.G. to attend in-patient treatment. J.G. did not comply with this order.

Therefore, legally and factually sufficient evidence supported the trial court's findings that J.G. used drugs in a manner that endangered the health and safety of R.A.B. Jr and M.M.G.-B. and she failed to complete a court-ordered substance abuse program.

We overrule J.G.'s fourth issue.

**(C)  The children's best interest**

J.G.'s fifth issue challenges the sufficiency of the evidence to support the trial court's finding on the children's best interest. A trial court cannot order termination of parental rights based only on the existence of a predicate ground; the termination must also be in a child's best interest. *Interest of G.C.S.*, 657 S.W.3d 114, 133 (Tex. App.—El Paso, pet. filed). There is a strong

but rebuttable presumption that it is in the child's best interest to preserve the parent-child relationship. *In re B.C.S.*, 479 S.W.3d 918, 927 (Tex. App.—El Paso 2015, no pet.). When analyzing the best interests of the child, we consider the *Holley* factors:

(A) the desires of the child; (B) the emotional and physical needs of the child now and in the future; (C) the emotional and physical danger to the child now and in the future; (D) the parental abilities of the individuals seeking custody; (E) the programs available to assist these individuals to promote the best interest of the child; (F) the plans for the child by these individuals or by the agency seeking custody; (G) the stability of the home or proposed placement; (H) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and (I) any excuse for the acts or omissions of the parent.

*Holley v. Adams*, 544 S.W.2d 367, 372 (Tex. 1976). "While no one factor is controlling, analysis of a single factor may be adequate in a particular factual situation to support a finding that termination is in the best interests of the child." *In Interest of J.M.T.*, 519 S.W.3d 258, 268 (Tex. App.—Houston [1st Dist.] 2017, pet. denied) (citing *In re A.P.*, 184 S.W.3d 410, 414 (Tex. App.—Dallas 2006, no pet.).

### (1) The children's desires

At the time of trial, R.A.B. Jr was thirteen years old. Hernandez testified that R.A.B. Jr was adamantly opposed to being adopted and wanted to remain with J.G. R.A.B. Jr wanted to maintain access to J.G. Further, J.G. testified that R.A.B. Jr had told her he wants to go home with her.

At the time of trial, M.M.G.-B. was twelve years old. Hernandez testified that M.M.G.-B. felt comfortable being adopted and she desired to go home to be with her grandmother, not J.G. M.M.G.-B. wanted to maintain access to J.G. J.G. testified that M.M.G.-B. had told her she also wants to go home with her.

Both children indicate a desire, to varying degrees, to maintain some contact with J.G. Therefore, we determine this factor weighs against the best interest finding.

### (2) The emotional and physical needs of the children as well as their exposure to emotional and physical danger

We consider each child's needs individually. Flores and Fisher testified that R.A.B. Jr has needed medication and therapy to manage aggression and attention deficit disorder. According to his treatment providers, R.A.B. Jr requires continued medication and therapy. Flores testified that because one of R.A.B. Jr's medications is a stimulate, there is a concern for abuse if he is placed in a household with a known drug user.

Munoz testified that M.M.G.-B was currently receiving cognitive behavior therapy to adjust her unhealthy thinking styles. During the therapy, M.M.G.-B. was working to adjust her interactions with R.A.B. Jr and improve her assertive communication. Munoz testified that the children should not be placed together at this time because M.M.G.-B. required more counseling to form a healthy relationship with her brother.

In terms of physical and emotional danger to the children, "a fact finder may infer [the] past conduct endangering the well-being of a child may recur in the future if the child is returned to the parent." *Interest of O.E.R.*, 573 S.W.3d 896, 907 (Tex. App.—El Paso 2019, no pet.) (citing *In re R.A.G.*, 545 S.W.3d 645, 653 (Tex. App.—El Paso 2017, no pet.); *In re D.L.N.*, 958 S.W.2d 934, 939 (Tex. App.—Waco 1997, pet. denied)). As discussed in the section analyzing parental termination under the endangerment predicate findings, there is evidence of past endangering conduct and environment. Specifically, the children's drug test results were positive for methamphetamine. J.G. continued to use amphetamines and methamphetamine throughout the pendency of this case despite the trial court's order denying her in-person visitation without a clean drug test. Further, J.G. continued to use amphetamines and methamphetamine knowing it could result in termination of her parental rights.

It is further relevant, that J.G. and the children tested positive for methamphetamine—a Penalty Group 1 narcotic. TEX. HEALTH & SAFETY CODE ANN. § 481.102(6). Methamphetamine is a "hard drug," unlike marijuana, for example, and carries greater risk of danger and incarceration. *Cf. Interest of M.A.J.*, 612 S.W.3d 398, 414 (Tex. App.—Houston [1st Dist.] 2020, pet denied) (determining that the children's current and future needs and danger factors weighed only slightly in favor of termination when the parent tested positive for amphetamines and methamphetamine only once at the outset of the case but continued to test positive for marijuana throughout). Based on the evidence of record, the trial court could have determined that J.G. would continue to endanger the well-being of the children.

These two factors weigh in favor of the best interest finding.

### (3) Parenting abilities and programs available to assist

When reviewing parenting abilities, a factfinder may consider the parent's past neglect or inability to meet the physical and emotional needs of the children. *Interest of O.E.R.*, 573 S.W.3d at 907-08. As previously discussed, the children's positive drug tests coupled with J.G.'s continued drug use are evidence of J.G.'s past neglect of the physical and emotional needs of the children. Although J.G. continued to be involved with the children through the pendency of this case, her continued drug use and failure to attend court-ordered inpatient substance abuse treatment could lead a reasonable trier of fact to conclude she had poor parenting abilities.

J.G. argues DFPS has shown poor parenting abilities because of R.A.B. Jr's reported weight loss. On August 21, 2022, R.A.B. Jr reported severe weight loss of 30 pounds in one year, and on that day, he weighed 97 pounds. J.G. did not provide any explanation of R.A.B. Jr's weight before removal or question any witness on this notation within RA.B.'s medical records. Further, in response to the report of weight loss, his caregivers were instructed to provide double portions

of food and to supplement with multivitamins. For these reasons, a trial court could determine DFPS reacted appropriately to R.A.B. Jr's reported weight loss under the circumstances.

When reviewing the availability of programs to assist a parent, the trial court may consider that the parent failed to comply with the court ordered service plan for reunification of the child. *Interest of G.C.S.*, 657 S.W.3d at 135. In July 2022, the trial court ordered J.G. to attend in-patient drug rehabilitation. J.G. did not comply with this order. J.G.'s failure to demonstrate sobriety and attend the court-ordered in-patient drug rehabilitation could lead a reasonable trier of fact to conclude she is unwilling to take advantage of services offered and further doubt her parenting abilities.

These factors weigh in favor of the best interest finding.

### (4) Plans for the children and the stability of the proposed placement

Hernandez testified that DFPS planned for the children to be adopted. However, the trial court did not terminate the parental rights of the children's father. Therefore, the children cannot be adopted, and we examine the plans and proposed placements for the children without considering adoption.

In terms of DFPS's plans for the children, Hernandez testified R.A.B. Jr's current placement, an emergency shelter, is a temporary placement and DFPS is looking to place R.A.B. Jr in the same city as M.M.G.-B., if possible, and eventually place the children together where appropriate for both of them. DFPS further plans to reduce R.A.B. Jr's need for medication through continued therapy. Hernandez testified M.M.G.-B. is currently in a foster home and DFPS plans for her to continue in that same placement. DFPS also plans for M.M.G.-B. to continue with her therapy.

J.G. did not testify as to any plans for the children other than having them return home. J.G. argues DFPS has failed to present a reasonable permanency plan for the children and, therefore, this factor should weigh against the best interest finding. However, this factor does not require a full permanency plan "instead, the inquiry is whether, on the entire record, a factfinder could reasonably form a firm conviction or belief that termination of the parent's rights would be in the child's best interest—even if the agency is unable to identify with precision the child's future home environment." *In re C.H.*, 89 S.W.3d at 28. Therefore, DFPS's lack of a firm permanency plan does not weigh against the best interest finding.

A reasonable trier of fact could conclude that DFPS's plans and stability for the children supported termination. These factors weigh in favor of the best interest finding.

After considering the evidence related to the *Holley* factors, the trial court could have reached the conclusion that termination of J.G.'s parental rights is in the best interest of her children. We conclude that the evidence supporting the best interest finding is supported by both legally and factually sufficient evidence.

We overrule J.G.'s fifth issue.

### D. Permanent managing conservatorship

In her sixth issue, J.G. argues the trial court's appointment of DFPS as the children's permanent managing conservator was not supported by legally or factually sufficient evidence. Here, the trial court appointed DFPS the children's permanent managing conservator and appointed their father as possessory conservator.

When parental rights are terminated, the trial court must appoint a managing conservator for the children. TEX. FAMILY CODE ANN. § 161.207(a). Conservatorship determinations are reviewed for an abuse of discretion and are reversed only if the decision is arbitrary and

unreasonable. *In re J.A.J.*, 243 S.W.3d 611, 616 (Tex. 2007). The termination of parental rights divests the parent of all legal rights and duties to the child. TEX. FAMILY CODE ANN. § 161.206(b). Once a court of appeals overrules a parent's challenge to an order terminating parental rights, the trial court's appointment of DFPS as managing conservator can be considered a consequence of termination. *In re J.D.G.*, 570 S.W.3d 839, 856 (Tex. App.—Houston [1st Dist.] 2018, pet. denied).

Because we have overruled J.G.'s challenge to the trial court's order terminating her parental rights, she no longer has legal rights or duties to either R.A.B. Jr or M.M.G.-B. *See* TEX. FAMILY CODE ANN. § 161.207(a); *J.D.G.*, 570 S.W.3d at 856. Therefore, J.G. does not have standing to challenge the portion of the trial court's order appointing DFPS as the children's permanent managing conservator. *See J.D.G.*, 570 S.W.3d at 856 (holding that a parent, whose termination of parental rights was affirmed, could not challenge a conservatorship determination).

We overrule J.G.'s sixth issue.

## IV   CONCLUSION

We overrule all J.G.'s issues and affirm the order terminating J.G.'s parental rights to R.A.B. Jr. and M.M.G.-B.

GINA M. PALAFOX, Justice

May 25, 2023

Before Rodriguez, C.J., Palafox, and Soto, JJ.